UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS ROSS,

       Plaintiff,                               Case No. 22-cv-12751

v.

                                         HON. MARK A. GOLDSMITH

AUSTIN ANDRESKI et al.,

       Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 31)

Marcus Ross is an inmate in the custody of the Michigan Department of Corrections (MDOC). He was, at the time relevant to this case, incarcerated at the Saginaw Correctional Facility (SRF) in Freeland, Michigan. See Ross Aff. at 1 (Dkt. 33).

In November 2022, Ross filed a pro se civil rights complaint under 42 U.S.C. § 1983 against Defendants Austin Andreski, Michael Karle, Jeremy Collins, and Lauren Swartz Andersen. Compl. (Dkt. 1). He alleges that Defendants, who are and/or were SRF correctional staff, violated his Eighth Amendment rights by intentionally placing him in a locked shower stall for 15 hours—without food, drink, toilet facilities, or bedding—as punishment for allegedly starting a fire in his cell block hallway. Id. Ross argues that he experienced chest pain, light-headedness, and dizziness after being held in these conditions, and that he did not receive medical treatment until over a day after he was removed from the shower stall. Id.

Defendants moved for summary judgment. Mot. Summ. J (Dkt. 31). Ross filed a response (Dkt. 32) along with an affidavit in support of his arguments (Dkt. 33). Defendants filed a reply brief (Dkt. 34).

For the reasons explained below, Defendants' motion is granted in part and denied in part.

## I.   BACKGROUND

At approximately 9:00pm on February 22, 2022, SRF prison officers observed a fire in the hallway outside of Ross's cell.  See Mot. Summ. J. at PageID.153.  Defendants aver that Ross started the fire.  Id.  They argue "Ross was being disruptive and was a safety concern for staff and other prisoners, thus, a quick decision was made to take Ross to the shower to calm down."  See Karle Aff. at 2 (Dkt. 31-3).

Defendants explain that prison policy required them to conduct a search of Ross's cell "and conduct an investigation of the fire safely."  Id.  Officers needed to remove Ross from his cell to effectuate the search safely.  Id.  Defendant Karle's search of Ross's cell resulted in his finding a modified extension cord with a fingernail clipper attached.  Mot. Summ. J. at PageID.153.  He avers that Ross admitted to using these items to start the fire.  See Karle Aff. at 2.  Karle wrote Ross a misconduct ticket for possession of dangerous contraband.  Id.

Defendant Andreski states that, after the search was completed and ticket issued, he "informed Ross he could return to his cell, but he was not verbally cooperative, refused to move, and stood in the shower."  Andreski Aff. at 2 (Dkt. 31-2).  He states that "Ross informed me that he wanted a transfer from SRF and did not want to go back to his cell."  Id. at 3.  He asserts that "Ross refused to leave the shower area despite requests several times throughout the evening and into the next day[.]"  Id.

Andreski explains that, while Ross was initially placed in the shower to compete a routine strip search and for staff to search Ross's cell without him present, the situation changed after Ross refused to leave the shower.  Id.  He states that normally, staff would be required to return Ross to his cell.  However, Ross's decision to remain in the shower "was not provoking a major disturbance, was not seriously destructive to state property, and [Ross] was not a danger to himself

2

or others." Id. Thus, the officers decided to allow Ross to stay in the shower, where he remained overnight for a total of 15 hours. Id. Defendants Andreski, Karle, and Collins all state that they could observe Ross on cameras and on rounds, and that Ross was not yelling for help, nor did they realize that he defecated in the shower, as Ross alleges. See Andreski Aff. at 3; Karle Aff. at 3; Collins Aff. at 3 (Dkt. 31-4). Collins states that he was "instructed to ask Ross if he needed anything or if he would return to his cell, which he refused." Collins Aff. at 3.

The next morning, officers informed Defendant Andersen that Ross was refusing to leave the shower. Andersen Aff. at 2 (Dkt. 31-5). She states that she spoke to Ross and offered to find him another cell. Id. Ross initially agreed, but later when she returned, he refused to leave the shower. Id.

Ross's version of the facts differs. First, he does not admit that he started the fire. See Resp. at 5. Instead, he argues that he shared his cell with one other person who could have just as easily started the fire. Id. at 7. Ross argues that Karle asked him: "Who put this fire in the hallway? Was it you or your bunkie?" Id. at 5. Ross responded, "I ain't no snitch." Id. He avers that Karle "became offended by Plaintiff's statement." Id.

Karle then told Ross, "I'm going to say you did it." Id. at 6. Karle and Andreski then handcuffed Ross and escorted him out of his cell. Id. Ross avers that Andreski stated, "I got a better idea. Let's lock him in the shower for the night and make him suffer." Id. Andreski told Ross, when placing him in the locked shower stall, to "[h]ave fun trying to sleep standing up," and told him, "[t]his is your punishment for breaking the rules." Id. When Ross asked how he was to use the restroom facilities and told the officers that he needed to do so, Karle told him to "[u]se the shower." Id.

3

Ross argues that Defendants never asked Ross if he needed anything or if he wanted to return to his cell. Id. at 7. Nor did Andreski tell Ross, after completing the search of Ross's cell, that Ross could return to his cell. Id. Rather, Ross maintains that he asked Defendants several times to be let out of the shower to return to his cell, but Defendants denied his requests. Id. He states that he was locked in the shower for 15 hours. Id. at 8. Ross states that the following day, he asked Andersen if he could be removed from the shower and she told him, "You deserve it; I'll move you when I feel like it." Id. at 8.

Ross also avers that he was denied breakfast and lunch on February 23 while held in the shower. When he asked for food, an officer told him, "I was told not to feed you." Id. at 11. He also argues that he was denied water and became dehydrated. Id. Instead of providing drinking water, Defendants told Ross that water was available from the shower and that Ross's refusal to drink shower water was not the Defendants' fault. Id.

Additionally, Ross asserts that he told Karle and Andreski that he needed to use the toilet but that they refused. Id. Ross states he "defecate[d] over the shower drain, which covered the whole area of the drain. Plaintiff continuously pressed the shower water button trying to dilute the feces to make it easier to go down the drain, which was not easy." Id. Defendants, he states, logged in a logbook that Ross flooded the shower. Id. They shut off the water to prevent further flooding. Id. Ross was forced to continue to urinate and defecate on himself in the shower stall. Id. at 12.

Ross became light-headed, dizzy, and started having chest pain after several hours in the shower stall. Id. He asked for medical care, but Karle and Collins told him to "take it like a man,"

4

and refused. Id. Ross obtained healthcare on February 25—two days after removal from the shower.[1] Id.

## II. ANALYSIS[2]

Ross brings Eighth Amendment excessive force and conditions of confinement claims against Defendants in their individual and official capacities. Compl. at 2–3. Defendants make three main arguments in their motion for summary judgment. First, they argue that there is no genuine issue of material fact on Ross's Eighth Amendment excessive force or conditions of confinement claims. Mot. Summ. J. at PageID.147–163. Second, Defendants argue they are entitled to qualified immunity for Ross's claims against them in their individual capacities. Id. at PageID.163–165. And third, Defendants argue that Ross's claims against them in their official capacities are barred by sovereign immunity. Id. at PageID.165–166.

---

[1] Ross argues that surveillance video from the prison supports his version of the facts. Resp. at 12–13. He alleges that he sought a copy of the video surveillance in discovery, but Defendants refused to provide it on the basis that "inmates are not allowed to have videos." Id. at 12. In response, Defendants state that Ross cannot support his arguments that video confirms his version of events because Ross does not present the video, nor does he have evidence that it exists. Defs. Reply at 3. Discovery closed on January 31, 2024. Ross's response brief is the first time he presented this discovery issue to the Court; this is long past the discovery deadline. Ross has not presented a motion to the Court under Federal Rule of Civil Procedure 6 setting forth good cause or excusable neglect for failing to present these issues earlier. In any event, the Court's disposition of the motion does not turn on the establishment of any facts that Ross says the video would confirm. In granting the motion in part, the Court accepts as true the facts that video supposedly confirms, including Ross being placed in handcuffs, confined to the shower, requesting relief, and defecating and urinating in the shower.

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

As further discussed below, the qualified immunity inquiry involves a two-step analysis: (i) whether a defendant violated the Constitution, and (ii) whether the violation was one of "clearly established" rights. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The first of these steps is the same analysis the Court would undertake in discussing Defendants' first argument in their motion. Mot. Summ. J. at 147–163. Because the Court need not address the same issue twice, it will analyze the constitutional claims within the context of the qualified immunity analysis.

A. **Qualified Immunity**

Defendants argue that Ross's claims against them in their individual capacity are barred by the doctrine of qualified immunity. Mot. Summ. J. at 163–164. "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights of which a reasonable person would have known." Bunkley v. City of Detroit, 902 F.3d 552, 559 (6th Cir. 2018). At the summary judgment stage, the plaintiff must show that "(1) the defendant violated a constitutional right; and (2) the right was clearly established." Quigley v. Tuong Vinh Thai, 707 F.3d 675, 680 (6th Cir. 2013). District courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson, 555 U.S. at 236. The Court will address each prong as it relates to Ross's excessive force claim and again as it relates to Ross's conditions of confinement claim.

1. **Excessive Force: Constitutional Violation Prong**

The "core judicial inquiry" in an Eighth Amendment excessive force case is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). Prison officials "violate the Eighth Amendment when their

6

offending conduct reflects an unnecessary and wanton infliction of pain." Cordell v. McKinney, 759 F.3d 573, 580 (6th Cir. 2014) (punctuation modified).

There is, therefore, an objective and subjective component to an excessive force Eighth Amendment claim. Id. The objective component "requires the pain inflicted to be 'sufficiently serious[,]' . . . that is 'responsive to contemporary standards of decency.'" Id. (citing Hudson, 503 U.S. at 8). The extent of the prisoner's injury, however, "is not dispositive of whether an Eighth Amendment violation has occurred." Id. at 581. The subjective component "focuses on the state of mind of the prison officials." Id. The Court must ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id.

In conducting a qualified immunity analysis, the Court must consider the facts "in the light most favorable to the party asserting the injury." Saucier v. Katz, 533 U.S. 194, 201 (2001) (overturned in part on other grounds by Pearson, 555 U.S. at 236).

Ross argues that Defendants used impermissibly excessive force when they placed him in the shower stall immediately following the fire.[3] See Resp. at 16–17. He also argues that Defendants' decision to lock him in the shower for 15 hours constituted excessive force. Id.

### a. Objective Component

Defendants' decision to remove Ross from his cell and escort him to another location (the shower) so that they could restore order and safely search Ross's cell following the fire was objectively reasonable. Defendants explain that they made a "quick decision" to take Ross to the shower "to calm down" after putting out the fire. Collins Aff. at 2. They argue that they decided to place Ross in the shower "as an alternative to physical force and not to cause [Ross] harm[.]"

---

[3] Ross argues that Defendants' initial placement in the shower stall, rather than in a segregation cell, constitutes excessive force. Ross Aff. at 2. He states that he "complied with the order, without incident." Resp. at 6. The Court evaluates the initial placement separately from the 15-hour hold.

7

Mot. Summ. J. at PageID.154.

In support of their argument that placing Ross in the shower was objectively reasonable, Defendants explain that they followed the policy and procedure set forth in the MDOC policy directives for handling a dangerous situation. They point to the MDOC policy regarding "Alternatives to Use of Force." Id. at PageID.155. It states, in relevant part, "If potentially dangerous situations or violent confrontations develop, … Personal safety and the safety of other staff, [and] offenders … must be a primary concern of employees at all times." Id. at PageID.155 (quoting 9/1/19 Policy Directive 04.05.112 (Dkt. 31-12, PageID.263)). The directive explains that in these situations, staff should use alternatives to force, such as, "[w]aiting for the prisoner to 'cool down' if this can be safely done (e.g., a prisoner who is disruptive but is confined and is not physically harming himself/herself, or threatening to do so, and is not physically harming another person or causing undue disruption to others.)." Id.

Another MDOC Policy Directive permits prison staff to remove a prisoner from their cell and place them in a temporary "holding cell or any other holding area within the facility." 6/1/19 Policy Directive 04.05.120, https://www.michigan.gov/corrections/public-information/statistics-and-reports/policy-directives [https://perma.cc/KE4Y-2U2S]. It states that holding prisoners in a "holding" cell is permissible when a prisoner "needs to be immediately separated from the general population," and, in these circumstances, prison staff may use a holding cell "for a few hours while staff determine the appropriate action to be taken (e.g., transfer, placement in temporary segregation, return to general population)[.]" Id.

Defendants explain that forced cell entries are typically conducted during business hours. However, due to the disruptive nature of the 9:00pm fire, they were forced to take non-ordinary steps to contain the situation. See Mot. Summ. J. at PageID.156. That Defendants chose a shower

8

stall is unusual; but it is not objectively inappropriate or unreasonable by itself. Given the circumstances of the time of day, prison policies regarding removal of a prisoner from a dangerous situation, and the MDOC and United States Court of Appeals for the Sixth Circuit's guidance that placement away from one's cell, in segregation or otherwise, for a short period is acceptable, the Court finds Defendants' decision to place Ross in the shower stall immediately after the fire does not violate the objective standard for excessive force.[4]

After the initial threat of the fire subsided, however, the situation changed. Ross's version of events is that he asked officers to return him to his cell, but they refused. Ross Aff. at 3–4. He argues that officers never checked if he needed anything or whether he wanted to return to his cell. Id. He states that they refused him a toilet, forcing him to defecate in the shower stall. Resp. at 11. He avers that, after he used shower water to try to clear the floor of his feces, Defendants turned off the water to his shower, stating he had flooded his shower stall. Id. He argues they simultaneously refused him food and water, telling him to drink from the shower. Id. at 14. He also states that he could not sleep because Defendants did not provide him with any type of bedding. Id. This continued for a total of 15 hours and resulted in him experiencing dehydration, chest pain, and dizziness. Id.

Defendants argue that this pain does not rise to the level of a "serious injury" for Eighth Amendment purposes. They argue that the injuries Ross complains of, if true, were "at most, minor injuries." Mot. Summ. J. at PageID.150. Defendants argue that, at the time of his deposition, Ross no longer had chest pain from the incident. Id. at PageID.151. They also argue

---

[4] Because the Court finds Defendants' initial decision to place Ross in the shower, rather than a segregation cell, immediately after the fire satisfies the objective component, the Court need not analyze the claim further under the subjective component or the clearly established analysis. See Rhodes v. Chapman, 452 U.S. 337 (1981) (ending the Eighth Amendment analysis after finding the plaintiff did not satisfy the objective component of the constitutional violation analysis).

9

that Ross presented no evidence of dehydration and, "[m]oreover, water was available from the showers[.]" Id. at PageID. 152. Neither argument is availing.

The Supreme Court directs that the key inquiry should be "based on the nature of the force rather than the extent of the injury." Wilkins, 559 U.S. at 34. That Ross no longer suffered chest pain at the time of his deposition, which was taken on January 30, 2024—almost two years after the incident—says nothing about the pain he experienced in February 2022. This Court similarly rejects the argument that shower water was available for Ross to drink. This ignores Ross's assertion that Defendants turned off the water in the shower.

Additionally, Defendants have not identified any penological justification for having Ross remain in the shower after the danger from the fire subsided. Indeed, their affidavits admit that by then, Ross was calm, non-disruptive, and did not present a danger to himself or anyone else. Andreski states, "at the time, Ross was not provoking a major disturbance, was not seriously destructive to state property, and was not a danger to himself or others." Andreski Aff. at 3. Karle and Collins aver that, by then, "Ross was confined, not a threat to himself or others, and not causing undue disruption." Karle Aff. at 3; Collins Aff. at 2. And Andersen states, "At no time did I receive any information that Ross was physically harming himself or others nor was he threatening to do so." Andersen Aff. at 2. Despite this, Defendants kept Ross in the shower for 15 hours.

Actionable force can take many forms. On the more extreme end, when prison guards punched, kicked, kneed, choked, and body slammed a prisoner, leaving him bruised, in pain, and requiring medical treatment, this injury satisfied the requirement that the nature of the force caused the prisoner harm. See Wilkins, 559 U.S. at 34. In another case, the Sixth Circuit permitted a prisoner to pursue excessive force claims where a guard never touched her, but sexually abused her through his demands. See Rafferty v. Trumbull Cnty., 915 F.3d 1087, 1094 (6th Cir. 2019).

10

The Supreme Court explains that "absence of injury" is not irrelevant to the inquiry but is also not dispositive. Wilkins, 559 U.S. at 37.

Ross's injuries, though not as extreme as the harm in Wilkins, fall between these two examples. He experienced discomfort from being held in a shower overnight, resulting in chest pain, dehydration, and dizziness. As the Supreme Court instructs, "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 559 U.S. at 38.

Ross also points again to the 6/1/19 Policy Directive 04.05.120, which mandates that prisoners be either returned to their regular cell or placed in an "appropriate" segregation facility after a few hours:

> When a prisoner is placed in an area designated for prisoners who refuse to return to their assigned housing unit, the Warden or Duty Administrative Officer shall be immediately notified via e-mail. Additionally, the prisoner may be issued a disobeying direct order misconduct for refusing to return to his/her cell. Holding areas shall not be used in lieu of temporary segregation or any other form of segregation. Any prisoner who needs to be housed in a temporary holding area for longer than a few hours must be transferred to an appropriate facility.

6/1/19 Policy Directive 04.05.120 at 2 (emphasis added). After the initial danger of the fire subsided, Defendants' decision to keep Ross in the shower for 15 hours ran afoul of this policy.

Ross has presented material facts in support of his position that he suffered harm after being held in the shower stall for 15 hours with no penological justification. Defendants' decision to hold Ross in the shower meets the objective standard for excessive force.

Having found that Plaintiff satisfied the objective component of the analysis as to his 15-hour hold in the shower, the Court turns next to the subjective component.

### b. Subjective Component

As the Supreme Court explains, the "core judicial inquiry . . . was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to

11

maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37 (internal quotations and citations omitted). The Sixth Circuit explains that "In determining whether a prison official had a culpable state of mind, we have found it helpful to consider 'such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted,' as well as 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.'" Cordell, 759 F.3d at 581 (quoting Whitley, 475 U.S. at 321).

Ross has presented material facts that support the subjective component. For example, he argues that Andreski stated, when escorting Ross to the shower, "I got a better idea. Let's lock him in the shower for the night and make him suffer." Resp. at 6. Andreski also said, "Have fun trying to sleep standing up," and "This is your punishment for breaking the rules." Id. Ross further avers that Andersen told him, when he asked to be moved out of the shower, "You deserve it; I'll move you when I feel like it." Id. at 8. Moreover, he indicates that he asked Karle and Collins to use the toilet several times and they refused to let him out of the shower stall. Ross Aff. at 8. This resulted in him being forced to defecate on the shower floor in place of a toilet. Id. These facts, combined with Defendants' admissions that Ross was calm and cooperative, the initial threat of the fire had by then subsided, and there was no other penological reason to hold him in the shower, meet the subjective component for an excessive force claim.

2. **Excessive Force: Clearly Established Violation Prong**

"Despite [defendants'] participation in this constitutionally impermissible conduct, [they] may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982)).

The Supreme Court explains that a constitutional right is clearly established if:

> The contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted). The Sixth Circuit states that the "salient question" is whether, as of the date of the incident, the law gave Defendants fair warning that their alleged treatment of Ross was unconstitutional. Barker v. Goodrich, 649 F.3d 428, 435 (6th Cir. 2011) (citing Hope, 536 U.S. at 741). In other words, on the date of the alleged violation, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

The Supreme Court explains that "[w]e have repeatedly told courts . . . not to define clearly established law at a high level of generality, . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 572 U.S. 765, 778–79 (2014) (internal quotations and citations omitted). Despite this high hurdle, Ross has carried his burden of showing that his Eighth Amendment rights were clearly established as of the date of the incident and, thus Defendants are not entitled to qualified immunity.

In 2011, years before the events in this case occurred, the Sixth Circuit explained in Barker, 649 F.3d 428, that "a wide variety of sources, even those that are not authoritative, can provide defendants with fair warning." Id. at 436. There, the plaintiff argued that the defendants violated both his rights against excessive force and confined him under inhumane conditions when they pulled the plaintiff from his cell, handcuffed him, "and placed in an observation cell where he remained for over twelve hours with his hands restrained behind his back." Id. at 430. During

13

that time, the plaintiff "was forced to maintain an awkward and uncomfortable position, missed a meal, and was unable to push a button for water or pull down his pants to use the toilet; his requests for mental health services went unanswered." Id. The Sixth Circuit found that these conditions violated the plaintiff's right to be free of excessive force and constituted "a denial of the minimal civilized measures of life's necessities." Id. at 434. It explained that, under the facts viewed in the light most favorable to the plaintiff, there was no penological need to keep him handcuffed in the cell because he was nonresistant.

> The Sixth Circuit then found that the plaintiff's right was clearly established. It explained:
>
> Case law from the Supreme Court, this Court, and other circuits established at that time that each condition seen here—restraining an inmate in an uncomfortable position, denying access to water, and denying access to the toilet—could rise to an Eighth Amendment violation if allowed to persist for an extended period. These cases, taken together with the notice given by normal prison practice and the obvious cruelty inherent in the conduct, clearly established that Defendants' alleged conduct—subjecting [the plaintiff] to all of these conditions at once for a period in excess of twelve hours—violated [the plaintiff's] Eighth Amendment rights.

Id. at 435.

The Court also noted that prison staff's "deviation from normal practice and prison policies" can provide notice that staff's actions are improper. Id. at 436. As discussed above, Defendants failed to follow the mandate in the 6/1/19 Policy Directive 04.05.120 when they left Ross in the shower for longer than a few hours.

Further, the Sixth Circuit stated that "obvious cruelty inherent in a punishment can serve as notice that it is unconstitutional." Id. at 437. It noted that, "Taking [the plaintiff's] evidence as true, he was handcuffed in an uncomfortable position for over twelve hours for no legitimate purpose, and denied even the basic dignity of relieving himself. The obvious cruelty in Defendants' actions warned them that they were violating the prohibition against cruel and unusual punishment." Id.

14

For these same reasons, the Court finds that Defendants here had fair warning that holding Ross in a shower stall, with no access to food or water (after the shower water was turned off), without the basic dignity of relieving himself using a toilet, particularly where there was no penological purpose for keeping Ross in the shower stall, violated Ross's right against excessive force. Taking Ross's evidence as true, as the Court must at this stage, Defendants are not entitled to qualified immunity on Ross's excessive force claim.

### 3. Conditions of Confinement: Constitutional Violation Prong

Ross next argues that Defendants violated his constitutional right related to his conditions of confinement when they placed him in the shower and kept him there for 15 hours. "The Constitution does not mandate comfortable prisons, . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Thus, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Id. (punctuation modified). But not every harm or injury suffered in prison rises to the level of cruel and unusual punishment; "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Rhodes v. Michigan, 10 F. 4th 665, 673 (6th Cir. 2021) (quoting Farmer, 511 U.S. at 834).

As with the Eighth Amendment excessive force analysis, the conditions of confinement analysis involves both an objective and subjective component. Under the objective component, the plaintiff must show that the "deprivation" is "sufficiently serious." Farmer, 511 U.S. at 674. Under the subjective component, the plaintiff must show that the prison official "acted with "'deliberate indifference' to inmate health or safety,' which is a subjective inquiry into the defendant's state of mind." Rhodes, 10 F. 4th at 674. Again, the Court will first analyze Ross's

15

initial placement in the shower separately from his 15-hour confinement in the shower.

### c. Objective Component

The "sufficiently serious" or objective prong requires that the prisoner show that "a prison official's act or omission must [have] result[ed] in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. The Eighth Amendment imposes "duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Elhady v. Pew, 370 F. Supp. 3d 757, 764 (E.D. Mich. 2019) (quoting Burley v. Miller, 241 F. Supp. 3d 828, 836 (E.D. Mich. 2017)). Courts should consider "[t]he circumstances, nature, and duration of a deprivation" when evaluating these claims. Id. "Some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need[.]" Id.

Defendants' initial decision to place Ross in the shower following the fire was not objectively unreasonable, for many of the same reasons it was not objectively unreasonable under his excessive force claim. Again, officers followed a policy of removing an inmate from a dangerous situation, allowed him to "cool down," and safely conducted their investigation of the fire. Accordingly, Ross's cruel and unusual punishment claim related to his temporary placement in the shower stall does not meet the objective unreasonableness standard. Defendants are shielded from liability under qualified immunity for their decision to place Ross in the shower immediately following the fire.

However, Defendants' decision to keep Ross in the shower stall overnight for 15 hours does meet the objective standard. The Supreme Court has recognized that, in certain circumstances, prison staff's deprivation and denial of toilet facilities to an inmate can result in

16

"humiliating incidents," that can violate the Eighth Amendment, particularly where the plaintiff can demonstrate that the defendants had an "awareness of the risk of harm." Hope, 536 U.S. at 738, n.8. The Sixth Circuit has also acknowledged "that inadequate access to water and toilets can violate an inmate's Eighth Amendment rights if it continues for an extended period." Barker, 649 F.3d at 436.

The Court again relies on Barker. There, the Sixth Circuit found that the defendants objectively confined the plaintiff under inhumane conditions when they held him, while handcuffed, in a cell for 12 hours causing him to miss a meal, and, due to the position he was placed, rendered him unable to sit or lie down without pain, use the restroom or the drinking fountain. Barker, 649 F.3d at 434. The facts here are similar in that Ross argues he was denied food, water, basic sanitation, and a bed or other place to sleep while held in the shower overnight. For these reasons, Ross has satisfied the objective component for his 15-hour stay in the shower.

### d. Subjective Component

Under the subjective prong, "deliberate indifference," occurs when a plaintiff shows that an "official knows of and disregards an excessive risk to inmate health or safety[.]" Farmer, 511 U.S. at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Ross has established that Defendants were deliberately indifferent to his needs. Again, he points to Andreski's statement that he kept Ross in the shower as a "punishment," that Ross told him to use the shower and, when he told Karle that he needed to use the toilet, Karle denied him access to a toilet. Ross Aff. at 8. Additionally, Ross states asked Collins to remove him from the shower, and that Collins refused, and also that Collins never checked on Ross. Resp. at 6–8. He

17

also points to Andersen's statement that Ross "deserved" to remain in the shower and she would remove him when she "felt like it." Id. These facts establish the subjective component of the constitutional violation.

### 4. Conditions of Confinement "Clearly Established" Prong

Ross has also shown that his rights in this regard were clearly established, such that Defendants had fair notice of their unconstitutionality.

Barker again provides the basis for Ross's clearly established right related to his conditions of confinement. As in Barker, Defendants here had a "wide variety of sources" from which they had fair warning that holding Ross in a shower stall, with no food, water, toilet, or bedding, fell below the acceptable standard for conditions of confinement. See Barker, 549 F.3d at 436. This includes the Barker decision itself, where a combination of factors—many similar to here, as discussed above—added up to the Court's finding of unconstitutionally unreasonable prison conditions. Id. at 435–436. It also includes Defendants' own 6/1/19 Policy Directive 04.05.120, which mandated that Ross be moved out of the shower after the initial threat of the fire subsided. And, additionally, there is the "obvious cruelty" factor. Id. at 437. One would be hard-pressed to believe that placing an otherwise calm, non-disruptive inmate in a shower stall, where he stood in his own feces overnight for 15 hours, without access to food or water, is consistent with contemporary standards for basic human dignity.

Accordingly, the Court finds that Ross's conditions of confinement claim was clearly established at the time Defendants held him in the shower overnight on February 22, 2022. Defendants are not entitled to qualified immunity on this claim.

The Court acknowledges that Defendants' version of the facts greatly differs from Ross's. Defendants argue that Ross never asked to be removed from the shower; indeed, he insisted that he be permitted to stay there. Mot. Summ. J., PageID.156–157. They also state that Ross never

told anyone he had to use the toilet; nor did they realize he defecated in the shower. Id. PageID.161–162. They state they could have been justified in using some level of force to remove him, but instead they determined, "unless Ross was displaying seriously disruptive behavior while in the shower, MDOC Policy Directive directs staff not to do a force cell/room entry." Id. at PageID.157. They allowed him to stay in the shower for 15 hours. A jury will need to determine whether this decision violated Ross's constitutional rights.

### B. Sovereign Immunity

Ross sues Defendants for damages only. The law is well established that state prison officials, such as Defendants, are "entitled to … immunity on … claims for damages against them in their official capacities." Colvin v. Caruso, 605 F.3d 282, 289 (6th Cir. 2010). Sovereign immunity, therefore, bars Ross's damages claims against Defendants in their official capacity. These claims are dismissed.

### III. CONCLUSION

For the reasons explained above, the Court grants in part and denies in part Defendants' motion for summary judgment (Dkt. 31). Defendants are shielded by qualified immunity as to their initial decision to place Ross in the shower after the fire. However, they are not protected by qualified immunity as to their decision that Ross remain there for 15 hours without food, water, toilet facilities, or bedding. Ross's claims against Defendants in their official capacity are dismissed.

SO ORDERED.

Dated: March 30, 2025　　　　　　　　　　　s/Mark A. Goldsmith
Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge